Bob Schultz for the Plaintiff Appellant, Kevin Schreiner. And would you raise the lectern as much as you can? Yes. I think that's as high as it goes. I think you're right. This case involves the allegation that Quicken Loans illegally practiced the law business by procuring legal documents from a non-Missouri attorney. The key issue in this case is, for that state law claim, does the plaintiff have to show that the defendant charged a document preparation fee? That was the key issue down below. That's the key issue here. It's undisputed by us that no document preparation fee was charged. We contend, based on the Hargis decision and based on the statute 44010.2, that if you procure legal documents, you buy them from a non-Missouri attorney, and they've admitted they bought them from a non-Missouri attorney both before this court and below, that that's procuring legal documents and that's doing the law business, and there is no requirement to charge a document preparation fee. The document preparation fee defense arises from the fill-in-the-blank cases, dating from Hulsey v. Crider in 1952, where the Missouri Supreme Court said, if you've got a legal form, a standard form prepared by a Missouri attorney, you can fill in the blanks on that form as long as you don't charge a document preparation fee. And there's been several cases following that all talking about filling in the blanks. This is not a fill-in-the-blank case. This is a procuring legal documents case. Now, just two ways. Don't you have to show for valuable consideration? Absolutely, and there's two ways it occurs in this case and it occurs in general. Number one, my client paid fees to the defendant of approximately $1,700. And also in this case, we're not talking about showing anything. This is a 12B6 case, right? Right. It was a motion to dismiss that was granted. Right. Absolutely. So it's a matter of what you pled, I think. Yes. Plausibly pled. Absolutely, and we pled that, first, we paid the fees, and second, that they bought the documents from Walters Kluwer, and before this court and below, they admitted they bought the documents from Walters Kluwer. My experience has been they didn't. I don't think we have in the record how much they paid, but they paid between, if it was, I represent mortgage brokers too. I practice plaintiff and defendant work. They probably paid between $30 and $50 for the legal documents. So the valuable consideration in this case, as in most cases, is number one, the general fees paid to the defendant by my client, and number two, yes, sir? My hunch is that's not good enough. Doesn't it have to be a, quote, separate fee or increasing the customary charge? That's only if we're going to talk about document preparation fees being the requirement. You're correct, Judge. If a document preparation fee is required, that is the standard, a separate document preparation fee or you vary your general fees because you're filling in the blanks. Now, you, in fact, pled that, though, didn't you? We pled that, but this case, from their response in here, we have pled that. We did plead that, but we've also, through their briefing, learned that they've admitted they bought the documents, so we don't think we have to show a document preparation fee because procuring the legal documents, buying them, there's no requirement. Now, I must tell you that approximately two weeks ago, I lost a case in the Missouri Court of Appeals on this point, the Binkley case. If the Binkley case stands, I lose this case. The Binkley case in the Court of Appeals that I had to show a document. Even though you pled? Yes. Yes. Okay. I'm standing on, I have to beat the Binkley case because two weeks ago, I lost in the Court of Appeals, and I filed a motion for transfer to the Missouri Supreme Court. I am proposing to this court that if the Missouri Supreme Court takes transfer or the Court of Appeals orders it, that we await the Supreme Court's decision on this specific point. What would the estimate of the time interval be before that would happen? Sounds like it could last a long time. Well, now, you're asking me to predict what a Court of Appeals will do. I propose that, well, I would say a few months we will know for sure because the Court of Appeals probably will take a month to determine whether they're going to order transfer to the Missouri Supreme Court. If they don't, I will apply to the Missouri Supreme Court, and they would undoubtedly make their decision within about 60 days. Now, if they don't take the case and Binkley stands, I lose. You're conceding that. I am conceding that because that is the prudent thing to do. On the other hand, though, if Binkley goes up, I think it would be prudent to await the Missouri Supreme Court's decision on this point because this is a matter of state law, and we're to look at what the highest court in Missouri will do. As the defendant has pled, Binkley is one of several cases with almost identical facts. The issue in Binkley was, did I have to show a document preparation fee? In Binkley, the Court of Appeals said I did. Now, sort of a sidelight is the case that is the basis . . . I am conceding that. If Binkley stands, you're conceding you lose on that. Yes. Okay. Now, the defense counsel has a lot of advantages over me, but I have one small one. I argued the Hargis case on behalf of the mortgage broker for the Missouri Supreme Court, and we all know that in this give and take, you learn some things from me, and I learn some things from you. When I was before the Missouri Supreme Court, it was almost every man for himself because the court was very hostile to procuring legal documents from a non-Missouri attorney. And I read the Hargis decision, which I think is from 2011, to say, the mortgage broker did not charge a document preparation fee, but if the mortgage broker had been shown to have bought the legal documents, procured them, then the mortgage broker would have been liable two ways. One, they would have been liable for procuring, and fees were paid. And second, I think it's footnote nine says, when someone buys legal documents from a non-Missouri attorney, that non-Missouri attorney is akin to your agent, and the payment to them, you're responsible for that. So earlier a judge asked me about valuable consideration, and I said it comes two ways. One, the almost $2,000 in fees we pay. There's also the consideration of going through the transaction. And the third way is, according to the Missouri Supreme Court, if you procure legal documents, you're stuck, you're responsible for the payment you make to the person who provides them. So my point before the court is, I'm currently the loser in the Court of Appeals on this point, and I'm just suggesting that we wait and see if the Missouri Supreme Court gets that case, which defendants have said is essentially identical to this one, and see if they rule my way or their way. If they don't take the case, I lose. And if they take the case and I win there, I should win here. We want to get it right, and we actually have, in this particular situation, an opportunity to find out from the Missouri Supreme Court. And as a sidelight, it would save you guys a lot of time writing an opinion if you let the Missouri Supreme Court do it first. So I will save the rest of my time for rebuttal, and I would like to thank you for the opportunity to speak to you today. Mr. Hefferon, you may proceed. Good morning. Good morning. May it please the Court, and good morning, Your Honors. I appreciate counsel's concession that if Binkley is not reversed or not even taken actually on transfer, that that should control this case. And, in fact, it may be rather quick if the transfer is denied. Sounds like a good resolution for everyone. If that's what counsel wants to live and die by, I mean, I agree with that. Obviously, if the Supreme Court could take it, could say something, which would cause this Court to have to do something with the case, that is it wouldn't potentially say something that's a little off the point and this issue would still have to be resolved. I suppose that's possible. But most likely, either they're not going to accept transfer, or if they do accept transfer, they're rolling the case straight up. The complaints here are identical. Now, Binkley was a summary judgment case. This is a dismissal case, so there's the slight possibility that one decision might control it. And this may be academic in light of the concession, but just for the sake of having the discussion, it seems to me he did plead a separate fee or an increased origination charge or increased customary charge. Why wouldn't that alone be enough to survive a 12B6? I know there's obviously a summary judgment. He's got to come up with some evidence of that. But on a pleading on a 12B6 standard, why isn't that sufficient to have survived? That particular allegation, which is in paragraph 55, I believe, was only on information and belief. And in dealing with another information. He hasn't had discovery yet. Well, that's true, but he doesn't say on what the information or belief is based at all. I'll give you an example. He says on information and belief, my client was charged a separate fee. Well, we have the settlement statement. It's actually attached to the complaint. And there's nothing in it showing a separate fee, which just goes to show that an allegation on information and belief, that it was charged a separate fee and the only thing we have shows he wasn't. Is that entirely implausible that it would have been buried in maybe the, quote, adjusted origination fee? Is that entirely implausible? The law, as announced in this court in the Washington v. Countrywide case, is that as a matter of at least Missouri law, that when a fee is described as something on the HUD-1 settlement statement, that is what it is. And a party may not attempt to recharacterize it, get behind it, and explain that it is something else. And that is the decision by this court in the Washington case, I'm well familiar, I argued that case and lost that point because I had actually put an affidavit in explaining that a fee had been misdescribed. This court said, no, you can't do that. So I would say as a matter of this court's precedence, no, you can't get behind it. But in any event, even if you could. Even if in discovery he found a memo saying, hey, we've got to bump this up, we've got to bump up the originating fee by 50 bucks to cover the Walters-Clower cost. That was my argument, Your Honor, in the Washington case, and I lost that point. I actually put an affidavit in and it was summary judgment, and Judge Guy Tan actually granted summary judgment on that affidavit and it was reversed. Remind me, what was the name of that case? It was called Washington v. Countrywide. And what it did was it interpreted the case called Mitchell, which is a state court case. Again, it seems probably irrelevant in light of the concession, but it was an interesting academic. It is an interesting issue. Your Honor, I would say this, though, about that and the allegations of information and belief. We're not taking the position you can't allege something on information and belief, but from the standpoint of Iqbal and Twombly, you ought to say what that information and belief is based on. I mean, so for example, is it information and belief based on the fact that these charges look higher than people normally charge? Or based on my experience? Coming in to me, that seemed to be the question, is whether this was entirely speculative, that pleading, or whether that was a plausible pleading that ought to be entitled to some discovery. And that's sort of what I was exploring. Again, I think made irrelevant now by the concession. Yes, Your Honor, and I would just point the court to the fact that our position is that on Iqbal and Twombly, you have to say on what it's based, information and belief based on what? Something. But we do have cases post-Iqbal, post-Twombly that say, you know, the plaintiff ought to have a chance to do some discovery on these things. And if it's plausibly alleged. If it's plausibly alleged. And, Your Honor, I think that the district courts are somewhat over the lot on this. Judge Perry considered this, decided it wasn't enough. Let me just, with just another moment, if I can hold the court on the issue of two things. First of all, I didn't quite understand, again, maybe I'll be academic, I didn't quite understand the assertion that my client admitted it bought the documents from a non-Missouri attorney. Obviously, it's a motion to dismiss. I didn't admit anything. You know, I mean, obviously, you take the allegations as you stand. So we certainly don't admit that. Nor was there any allegation of a specific statement that my client bought documents for $30 or $50 or anything like that. So it's a very summary complaint and the court can read it. And I don't think there's any support for it. On the issue of Hargis, I would point out one thing, which I think probably was not as well developed in the briefs. Hargis, obviously, is the case in which the plaintiff rests and says, that case establishes that you can be liable for procurement even if the borrower doesn't pay you for the documents. And the difficulty with that actually lies in the dissenting opinion from Chief Justice Teitelman that the plaintiff relies so heavily upon. And I'll explain why. This was a summary judgment case. As the majority in the Hargis case described, there were three grounds for summary judgment. One was that the documents were not procured. And the third was the documents weren't paid for. The court, in the main opinion, said, we decide that, yes, the documents were not procured, so summary judgment was correct. A reviewing court, considering a summary judgment that was argued on three grounds, only has to affirm on one of them. If that element is gone, that element can't be proven, then, therefore, the judgment should be affirmed. Now, Chief Justice Teitelman thought that the summary judgment should be reversed. So he had to address all three arguments that had been presented, and he did. And, in fact, his opinion says, no, I think the documents were procured. And then he goes on and writes a lengthy couple of paragraphs about why he thinks valuable consideration was also paid. If the court had thought that valuable consideration was not an element of procurement, that discussion would have been unnecessary. In fact, if you look at Hargis, both the majority and the dissent talk about the fact a fee is an element of the claim. I agree with you, Judge Grimender, that that's why the issue is this allegation of valuable consideration. It is a necessary element, and Hargis recognized that. And so, certainly, Binkley recognized that. Binkley discussed Hargis at length, picked up this argument, essentially did what your honors would do if your honors would get there first. Because Binkley, for whatever reason, doesn't resolve it. And we think it treated Hargis correctly by finding considerations an element. We don't think that there was sufficient allegations of anything that would allow this case to go into a discovery, because the only allegations on consideration were on information and belief. One of them, that is, there was a separate fee, clearly was belied by the HUD one. And so they had to allege something more, some explanation for why they thought there was a fee buried here. And since they didn't do that, it was properly dismissed. Nothing further from the panel. Thank you for your time. Very well. Just a few quick points. Number one, we don't have an Iqbal problem here. It is quite plausible that, in fact, it has been admitted in the briefing, that the defendants got the legal documents from Walters Kluwer, a professional document company, and we've also alleged they paid for it. They don't deny it. So we believe that is all we have to show. The question is a legal question based on state law. Does a separate document preparation fee have to be charged? It was not charged here. We don't think it has to be charged. Hopefully the Missouri Supreme Court will tell us shortly. If they don't tell us, I lose. If they do tell us, I win. That's how it comes down, I think. I don't think it's an Iqbal problem at all. Does that court normally hold oral arguments on things of this type? There will be an oral argument for the Missouri Supreme Court if they take transfer. So with regard to Iqbal and Tuam. Well, there's no Iqbal problem if you're just sticking by your theory about procurement alone. Absolutely. Which I think you're taking off. I boiled it down and it's gone. I don't think I have to show it. If they deny transfer or if they accept transfer and you lose, do you intend to seek a dismissal of this appeal? If they grant transfer, let me see. If they deny transfer, I will inform the court. If they grant transfer and I lose, I will inform the court. And then I think you will rule against me. If I win . . . Based on your concession, that would . . . If I win that case, then I should win this case. That's how it looks to me. In this strange situation, in terms of timing, I think that's a prudent thing to do. The other issues in the case, I think, all turn on whether I have to show a doc prep fee. For instance, the pleading question. The amendment question, where I think the judge said, well, it would be futile to allow amendment because no doc prep fee was showing up on the HUD-1. I'd just like to take one minute to point out to you, not charging a document preparation fee is not a get out of jail free card. What's happening is various merchants, people, are putting a document preparation fee on a bill and then putting zero down. And because they do that, they say, well, I get to practice law now. Anyway, that concludes my argument. I would like to thank you for your time. Very well. Thank both sides for their argument. The case is submitted. We'll take it under consideration.